983 F.2d 1295
 61 USLW 2428, Fed. Sec. L. Rep. P 97,354,
RICO Bus.Disp.Guide 8205
 Robert J. CAVINESS; Barry J. Friedman; Brian A. Johnson;
Mark H. Tuohey, III; Patrick J. Haley, Jr.; Joseph E.
Kampa; Michael Hasten Bowman; Carolyn Ann Bowman; Big
Wheel Bikes, Incorporated; Caby C. Smith; Brian J.
McGregor; Katherine S. Feghali; Charles L. Frazier;
Deborah White; Richard J. Davey; Clifford R. Dunning,
Plaintiffs-Appellants,
and
Jesus D. Tapiador; Kathleen H. Kampa; Michael D. Sendar, Plaintiffs,
v.
DERAND RESOURCES CORPORATION; Derand Equity Group,
Incorporated; Derand Energy Corporation; Arlington Energy
Corporation; Derand Corporation of America; Rome Resources
Corporation; Derand Investment Corporation of America;
Derand/Pennington/Bass, Incorporated; Randall N. Smith;
Malcolm R. Rudolph; Denison E. Smith; Dan R. Kiely;
William A. Conway; David B. Reese; Carlile and Howell,
Incorporated; Marshall Exploration, Incorporated; Kenneth
Q. Carlile, Defendants-Appellees,
and
Daniel C. Snyder; Rebecca J. Poth; Darcy Smith; Lynn
Greenhouse; Frank H. Jacobeen, Jr.; Charles H. Chaney;
John E. Johnson; Martex Drilling Co.; H & C Well Services,
Incorporated; Crosstex Pipeline, Incorporated; Crosstex
Pipeline Company; Quinton B. Carlile; T.D. Howell; Steven
B. Carlile; James Lyle, Defendants.
 No. 92-1413.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 26, 1992.
Decided Jan. 11, 1993.
As Amended Jan. 26, 1993.
 
 Robert Norman Levin, Schweitzer, Bentzen & Scherr, Washington, DC, argued (William C. Dickerson, on brief), for plaintiffs-appellants.
 Anthony John Trenga, Hazel & Thomas, P.C., Alexandria, VA, argued (Anne M. Richard, Hazel & Thomas, P.C., Alexandria, VA; Kim J. Askew, Theodore Stevenson, III, Hughes & Luce, L.L.P., Dallas, TX, on brief), for Marshall defendants-appellees.
 Howard V.B. Sinclair, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, argued (Jason S. Palmer, on brief), for DeRand, defendants-appellees.
 Before NIEMEYER and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 We are presented with questions about the proper application of statutes of limitations to securities fraud claims, the principal issues being whether the three-year period of repose contained in § 13 of the Securities Act of 1933 may be extended by a theory of integration[1] or tolled by fraudulent concealment or equitable estoppel. We are also presented with the question of whether allegations that state a claim for rescission under § 12(2) of the Securities Act satisfy the requirement of the Racketeer Influenced and Corrupt Organizations Act (RICO) that a loss be caused by a violation of the Act. See 18 U.S.C. § 1964(c).
 
 
 2
 Seventeen plaintiffs, who invested slightly more than $900,000 in oil and gas partnerships, sued more than 25 individuals and companies involved in developing and marketing these projects, alleging that the defendants' private placement memoranda were misleading because of untrue statements and omissions. They alleged federal and state securities laws violations, a RICO violation, and common law fraud. The district court granted defendants' motion for summary judgment, dismissing with prejudice all counts except a pendent claim under the Texas Blue Sky Law which it dismissed without prejudice because it decided not to exercise pendent jurisdiction (or supplemental jurisdiction). See 28 U.S.C. § 1367(c). The court relied on applicable statutes of limitations to dismiss the securities law counts and the absence of direct causation of loss to dismiss the RICO and fraud counts.
 
 
 3
 For the reasons given hereafter, we modify the dismissal of Count V (alleging a Louisiana Securities Act claim) to be without prejudice and, with that modification, affirm the judgment of the district court.
 
 
 4
 * During the period from May 1987 through December 1988, the plaintiffs invested approximately $905,000 in oil and gas wells located in Louisiana and Texas by purchasing partnership interests in one or more of five oil and gas limited partnerships.[2] These partnerships were created and managed by various persons and companies within the group of defendants referred to in this litigation as the "DeRand defendants."[3] The DeRand defendants, who were generally engaged in selling securities to raise venture capital, formed the limited partnerships in this case to purchase lease rights in oil and gas wells, mainly from the second group of defendants referred to as the "Marshall defendants."[4] The Marshall defendants were engaged in the exploration and development of oil and gas wells. The Marshall defendants were also retained as operators of the properties. They continue in that capacity today, distributing revenues to the limited partnerships, which in turn distribute them to the plaintiffs.
 
 
 5
 The plaintiffs are, for the most part, accountants and lawyers in the Washington, D.C., area who invested in these projects primarily for tax reasons. They claim that they have not been receiving the financial returns which they were led to expect and that the private placement memoranda on which they relied to make their investment decisions were misleading. In particular, the plaintiffs allege that they were provided with unaudited financial data, which failed to disclose the existence of significant litigation, when audited statements were available. They also contend that the auditors "had come to very different valuations" of the assets. Finally, they contend that management fees paid to various defendants were not adequately disclosed.
 
 
 6
 The plaintiffs filed suit on August 28, 1991, and, in their amended complaint (filed thereafter), they alleged a violation of § 12(2) of the Securities Act (Count I), a RICO violation (Count II), violations of the securities laws of Virginia (Count III), Texas (Count IV), and Louisiana (Count V), and common law fraud (Count VI).
 
 
 7
 The defendants have denied that any information on which the plaintiffs could have relied was misleading. They note that audited financials were made available to at least some of the plaintiffs and contend that the undisclosed pending litigation was not material, particularly in view of the fact that the defendants were later vindicated.
 
 
 8
 On defendants' motion for summary judgment raising various technical defenses to each count, the district court ruled that (1) the federal securities claims of all plaintiffs, except plaintiffs Caviness, Frazier, and White, were barred by the three-year statute of repose contained in § 13 of the Securities Act; (2) the federal securities claims of Caviness, Frazier, and White were barred by the one-year limitation of § 13; (3) all claims under the Virginia and Louisiana statutes were likewise barred by the applicable statutes of limitations; and (4) the RICO and common law fraud claims failed to contain allegations of a loss caused by the violations alleged. The remaining claim under Texas law (Count IV) was dismissed without prejudice, the court finding "no basis ... to exercise its pendent jurisdiction."
 
 
 9
 This appeal followed.
 
 II
 
 10
 Applying the three-year limitation provision of § 13 of the Securities Act,[5] the district court dismissed the federal securities law claims of all but three of the plaintiffs because the "sales" at issue occurred more than three years before suit was filed.[6] Among the theories advanced by plaintiffs on why § 13 should not be applied to bar their action is their contention that the district court erred in applying the three-year limitation period to each sale separately. They argue that all sales from the various offerings put together by the defendants should be integrated and that the date when the three-year period should begin to run for all purchasers is the date of the last sale in the integrated offering. Because the last sale of any of the related partnership interests was in December 1988, a suit filed in August 1991 was filed well within the three-year limitation period.
 
 
 11
 For determining when to integrate offerings for the purpose of applying the limitations statute, the plaintiffs would have the court borrow the factors enumerated in Securities Act Release No. 4552 (Nov. 6, 1962), 27 Fed.Reg. 11316 (reprinted as a note to 17 C.F.R. § 230.502(a)), which listed factors to be considered in determining whether multiple offerings and sales should be integrated for purposes of satisfying an exemption from registration requirements under the Securities Act. To support their argument, plaintiffs rely mainly on the decision in Currie v. Cayman Resources Corp., 595 F.Supp. 1364 (N.D.Ga.1984), reviewed on other grounds, 835 F.2d 780 (11th Cir.1988). The court in Currie integrated a series of related and similar offerings, holding that because the criteria for integration had been substantially met and the fraud occurred throughout the offering period, "the date of the final capital contribution [to the limited partnership] [was] the date on which limitations [began] to run." 595 F.Supp. at 1377 (emphasis added).
 
 
 12
 The defendants point out that the factors listed in Release No. 4552 were intended to apply only to the issue of whether an offering is "public" and subject to registration, not to the question of when various statutes of limitations begin to run. The defendants argue that there is no basis in the Securities Act for extending the limitation period beyond three years after the sale to the plaintiff investor, finding support for this position in Hayden v. McDonald, 742 F.2d 423, 436-37 (8th Cir.1984) (holding theory of integration has no impact on Minnesota Blue Sky Act statute of limitations, which is patterned after § 13 of the Securities Act), and Bresson v. Thomson McKinnon Sec., Inc., 641 F.Supp. 338, 344 (S.D.N.Y.1986) (holding theory of integration does not apply to § 13 of the Securities Act).
 
 
 13
 No circuit decision considering the issue presented by the parties has been cited, and we are aware of none.
 
 
 14
 We begin the inquiry, as we must, with the statutory language of § 13 which provides in pertinent part that "[i]n no event shall any such action [under § 12(2) ] be brought ... more than three years after the sale." 15 U.S.C. § 77m (emphasis added). The term "sale" is defined to include "every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(3). The three-year limitation language of § 13 allows for no qualification emanating from the claimant's circumstances. It is a statute of repose,[7] cf. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, ----, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991), and the plain statutory language does not permit the conclusion that a sale occurring more than three years before the suit was filed is nevertheless saved when closely linked to another sale that occurs within the three-year period. The plaintiffs seem to be arguing that the term "sale" when used in § 13 may refer to an entire offering and include any sale made during that offering, whether or not to the plaintiff. Such an interpretation, however, would change the focus of § 13 from the sale that the plaintiff seeks to rescind to a group of related sales or offerings. Section 12(2), for which § 13 is the limitations statute and on which plaintiffs base their claim, provides in essential part:
 
 
 15
 Any person who sells a security by means of a communication, which includes an untrue statement of material fact or omits to state a material fact, shall be liable to the person [not having knowledge of the untruth or omission] purchasing such security from him, who may sue to recover the consideration paid or for damages if he no longer owns the security.
 
 
 16
 15 U.S.C. § 77l (2) (ellipses omitted and emphasis added). For a purchaser to have the benefit of rescinding a sale referred to in § 12(2), he must, as provided in § 13, assert his claim within three years of the sale. The "sale" referred to in § 13 (from which the three years runs) is undoubtedly the sale referred to in § 12(2) for which the plaintiff is given a right of rescission. If that is a correct interpretation, the sale in § 13 cannot be referring to a later, related sale to another purchaser.
 
 
 17
 It might be argued that if there is a period of time between the date when the security is transferred to the purchaser and the date when the purchaser gives value, the sale is not complete until the value is given and therefore the limitation period does not begin until then. It does not follow, however, that the purchaser receives the benefit of a later sales date involving another purchase of a related security. If the court in Currie, on which plaintiffs rely, was in fact applying the first type of analysis when it concluded that "the date of the final capital contribution" is the date from which the period of limitations begins, see 595 F.Supp. at 1377, it was resting on an arguable interpretation of the statutory scheme (though one which we do not necessarily adopt). On the other hand, if Currie held that an earlier completed sale was to be integrated into a later sale and thereby saved from the limitations bar, we find the conclusion inconsistent with the statute. It practically goes without saying that integration is similarly inappropriate when one purchaser tries to use the date of a later sale made to a separate purchaser. The concept of integrating sales and offerings was developed by the Securities and Exchange Commission in a totally different context and for the totally different purpose of determining whether the effect of multiple sales on the marketplace merits regulation or exemption from registration, and it has no application to the commencement of the statute of limitations.
 
 
 18
 We therefore conclude that a theory of integration, as advanced by plaintiffs, may not be applied to a claim under § 12(2) to alter the three-year statute of repose of § 13 which applies separately to each sale that a plaintiff wishes to rescind, even if the sale is closely related to another sale which is not so barred. Cf. Hayden, 742 F.2d at 436-37 (reaching a similar conclusion under the Minnesota Blue Sky Act which has a statute of limitations provision similar to that contained in § 13 of the Securities Act).
 
 III
 
 19
 To avoid § 13's three-year bar the plaintiffs contend alternatively that the running of that limitation period is tolled by fraudulent concealment and that defendants should be equitably estopped from relying on plaintiffs' failure to establish the limitation requirements. Plaintiffs base their arguments on allegations that the defendants continued to provide misleading information and to conceal material information. The district court found that plaintiffs had failed to produce evidence sufficient to support their arguments.
 
 
 20
 Even if we were to accept plaintiffs' conclusory characterizations of the facts, to adopt an interpretation that tolling principles should be applied to extend the three-year period of § 13 would require us to ignore the plain meaning of the language that says "in no event" may an action be filed more than three years after the sale and defeat the very purpose of a statute of repose. See supra note 7. It would also render meaningless the discovery standard that is applied to the one-year limitation provision. Section 13 explicitly addresses the discovery standard, providing that an action can be brought within one year after discovery of the misleading character of a statement or omission. Distinguishing the one-year period where a discovery standard is applied, § 13 proceeds to state without qualification, "in no event shall any such action be brought ... more than three years after the sale." 15 U.S.C. § 77m (emphasis added).
 
 
 21
 Construing similar one-year/three-year limitation provisions under the Securities Exchange Act of 1934, the Supreme Court stated in Lampf:
 
 
 22
 The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling.... Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.
 
 
 23
 --- U.S. at ----, 111 S.Ct. at 2782. While the one-year/three-year language of § 9(e) of the Securities Exchange Act, selected by the Court in Lampf for application to a claim under § 10(b) of the Securities Exchange Act, commences the three-year period "after such violation," see 15 U.S.C. § 78i(e) (emphasis added), and the date from which the three-year period commences under § 13 of the Securities Act is the date of "sale," the difference is immaterial and, if anything, argues for a more absolute interpretation of § 13. Accordingly, we hold that fraudulent concealment based on a continuing violation of the securities laws does not apply to toll the three-year period of repose specified in § 13 of the Securities Act of 1933.
 
 
 24
 To advance a theory of equitable estoppel, plaintiffs rely on some of the same facts alleged to support their theory of fraudulent concealment and particularly on a statement made by one of the defendants at a meeting in May 1991. At the meeting, when some of the plaintiffs asked that their interests in a particular limited partnership be purchased back, Steven Carlile, one of the Marshall defendants, responded, "they would need some time to review the matter." Plaintiffs claim they were lulled into complacency by this statement and therefore delayed filing suit for three months.
 
 
 25
 The doctrine of equitable estoppel has been applied only where a defendant has misled a plaintiff, causing that plaintiff to delay filing a viable suit until after that suit becomes barred by a statute of limitations. See United States v. Fidelity and Casualty Co., 402 F.2d 893, 897-98 (4th Cir.1968). It is typically applied where a defendant has misrepresented to a plaintiff his legal rights, see, e.g., Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232-35, 79 S.Ct. 760, 761-63, 3 L.Ed.2d 770 (1959), or has used settlement negotiations to induce delay, see, e.g., Fidelity and Casualty Co., at 896-97.
 
 
 26
 The plaintiffs in this case have presented no evidence that they were misled into delaying the filing of any viable claim. Moreover, no claims lapsed in the period between the date of the meeting (May 8, 1991) and the filing of this suit. All claims barred by the three-year limitation at the time suit was filed had already been barred at the time of the May meeting. Accordingly, we need not consider whether, as a general matter, equitable estoppel is appropriate in the context of § 13's statute of repose.
 
 IV
 
 27
 Our conclusions that the three-year statute of repose in § 13 is inconsistent with the doctrine of integration and is not tolled in this case by the doctrines of fraudulent concealment or equitable estoppel dispose of all but three of the federal securities claims. Only the purchases by Caviness on December 28, 1988, and by Frazier and White on December 23, 1988, were made within the three-year period before suit was filed. We turn now to the question of whether the district court erred in applying the one-year limitation period of § 13 to bar these remaining claims under § 12(2).
 
 
 28
 Section 13 of the Securities Act provides in pertinent part:
 
 
 29
 No action [under § 12(2) ] shall be maintained ... unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence....
 
 
 30
 15 U.S.C. § 77m. Because the very statute that gives a plaintiff his cause of action conditions its enforcement on commencement of the action within specified time periods, the plaintiff bears the burden of establishing that his action meets the statutory requirements. It is the general rule that in these circumstances the plaintiff must plead and prove facts that show that his action was filed within the time periods specified by statute. See Toombs v. Leone, 777 F.2d 465, 468 (9th Cir.1985); Cook v. Avien, Inc., 573 F.2d 685, 695 (1st Cir.1978); 3 Louis Loss, Securities Regulation, 2d Ed. at 1744 (1961); see also In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig., 636 F.Supp. 1138, 1168-69 (C.D.Cal.1986) (dismissing, with leave to amend, § 12(2) complaint for failure to plead due diligence in investigating potential fraud and thereby to show compliance with one-year prong of § 13).
 
 
 31
 In their complaint plaintiffs alleged simply:
 
 
 32
 Defendants concealed their violations of the securities Statutes and the misrepresentations and omissions aforesaid and the named Plaintiffs did not discover and could not have discovered the said violations until recently.
 
 
 33
 Amended Complaint p 91. When the general allegation that the statute of limitations had been tolled was tested by defendants' motion for summary judgment, evidence was presented that on January 12, 1990, several plaintiffs, including Caviness, attended a meeting with some of the defendants to complain about the lack of information about the ventures and their lack of success. When the attending plaintiffs complained that some of the ventures could not succeed under current projections, they were advised that the problem was failed economics, a risk inherent in the oil and gas exploration business. One of the plaintiffs, Mark Tuohey, then spoke of the need to conduct an investigation because the "group suspects misrepresentations, omissions, breach of fiduciary duty and fraud." The investigation that ensued in the succeeding months disclosed the very matters about which plaintiffs now complain.
 
 
 34
 Caviness argues that what he knew as of January 12, 1990, was not sufficient to commence the running of the one-year limitation period, because he did not know of the specific misrepresentations and omissions later discovered. We believe that this view miscomprehends the scope of § 13. That section provides for the commencement of the one-year limitation period when the plaintiff knows of the facts on which the action is based or has such knowledge as would put a reasonably prudent purchaser on notice to inquire, so long as that inquiry would reveal the facts on which a claim is ultimately based. See Kennedy v. Josephthal & Co., 814 F.2d 798, 802-03 (1st Cir.1987). While the question of when a plaintiff should have known enough to inquire is ordinarily fact-laden, in this case the knowledge that Caviness confessed to having as of January 12, 1990, was the very knowledge that led him to undertake an investigation and discover the facts or omissions which he contends proved his case. Even if we accept Caviness' contention, as we must at the summary judgment stage of litigation, that on January 12 he was not aware of the particular facts discovered by his investigation, it is apparent that what was known to him on January 12 provided him inquiry notice of his claims. Accordingly, we conclude that the district court did not err in finding that the one-year period of limitation commenced running at least as early as January 12, 1990, and that, therefore, a suit filed on August 28, 1991, was untimely under § 13.
 
 
 35
 As for Frazier and White, the record is bare of any statement of their position or any facts to support a contention that they did not know at least as much as the other investors did. While they were not at the January 12 meeting in person, they failed to allege or show that they were not as informed as the other investors at the time. The most that can be attributed to their position from the record is an answer to an interrogatory in which they stated they did not discover the existence of specific litigation until later, a fact which is also true for Caviness. This, however, does not meet the burden of showing an absence of inquiry notice that otherwise must be attributed to the investors generally.
 
 
 36
 When the defendants filed their summary judgment motion based on a failure of Frazier and White to satisfy the statute's limitations conditions, it became incumbent on Frazier and White to make a showing sufficient to establish the existence of a factual dispute about this element of their case. In the absence of any affidavits, depositions, or other properly established evidence to support this element of the plaintiffs' case, the district court acted properly in granting the motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 V
 
 37
 Relying on their securities claims as predicate acts, plaintiffs alleged in Count II that the defendants violated RICO, 18 U.S.C. §§ 1962, 1964. The district court dismissed Count II because the plaintiffs failed to allege or show any loss caused by a RICO violation.
 
 
 38
 Without addressing on appeal the core issue of whether a violation of § 12(2) of the Securities Act, without more, can serve as the basis for a RICO violation, plaintiffs generally contend that their claims fit within the boundaries of our holding in Morley v. Cohen, 888 F.2d 1006 (4th Cir.1989). They argue:
 
 
 39
 Rather than debating how many angels can dance on the distinction between "but for" and "proximate cause," Plaintiffs need only point to Morley v. Cohen, 888 F.2d 1006 (4th Cir.1989), a case which even Defendants acknowledge, at page 24 of their brief, meets their definition of causation. The claim by plaintiff investor in Morley was that he would not have invested had he known the true facts.
 
 
 40
 Appellants' Reply Brief at 8. Plaintiffs then argue that their allegations meet this test, stating:
 
 
 41
 In the instant case, plaintiffs point to misrepresentations regarding the economic and legal history of the principal operator of their investments. These misrepresentations led investors away from more vigorously challenging the income projections provided by Defendants and the success rate of Marshall. In short, the positions of the instant Plaintiffs exactly correspond with that of the Morley Plaintiff and the result here should be the same as the result in Morley.
 
 
 42
 Id. at 8-9.
 
 
 43
 The defendants contend that in addition to the allegations that support a claim under § 12(2) of the Securities Act, the plaintiffs must, to state a RICO violation, allege that they relied on the misrepresentations and that they sustained a loss proximately caused by them. They argue that the plaintiffs, in response to the summary judgment motion, "failed to present evidence of loss causation," and that the claim for rescission does not satisfy the requirement that such causation be shown. They also argue that plaintiffs failed to present any evidence of reliance, emphasizing the fact that many plaintiffs even admitted they had never read the private placement memoranda. We believe defendants' arguments are well taken.
 
 
 44
 Plaintiffs' complaint adequately alleges a violation of § 12(2) of the Securities Act, which significantly broadened the common law of deceit by, as is relevant here, permitting rescission without a showing of reliance or damage. In their complaint plaintiffs allege that the private placement memoranda and unaudited financial information which they reviewed failed to disclose material litigation then pending, as well as the alleged fact that the Marshall defendants "had a long history of being sued by investors." Amended Complaint p 33. They also contend that the defendants showed them unaudited financial statements and failed to "reveal that they had the said audited statements and that their auditors had come to very different valuations" of the Marshall defendants' assets. Amended Complaint p 38. Finally, they contend in their complaint that certain management fees were not adequately disclosed. Amended Complaint p 40. They conclude that the private placement memoranda were rendered misleading and that "Plaintiffs and others similarly situated were purchasers who did not know of such untruths or omissions within the meaning of § 12(2)" and were therefore entitled to rescission as authorized by § 12(2). Amended Complaint pp 90, 94.
 
 
 45
 On the basis of these predicate acts, without any further details, the plaintiffs allege (using the statutory language of RICO) that they are "persons who were injured in their business or property by the violation." Amended Complaint p 104. The prayer for relief, however, does not demand damages, but rather asks (in the language of § 12(2)) for entry of an order "returning all of the funds invested by Plaintiffs and others similarly situated less cash received by the Plaintiffs and other investors in connection with their investments." The RICO claim is thus premised upon allegations that go no further than necessary to satisfy § 12(2) of the Securities Act, with the addition of a conclusory allegation that plaintiffs were injured in their business or property by the violations.
 
 
 46
 While plaintiffs' allegations may justify a claim under § 12(2), they fail to meet the requirements of a private claim under RICO, 18 U.S.C. § 1964(c). A claim under § 12(2) may be grounded on untrue statements and omissions that make a memorandum misleading, whether or not the plaintiff relied on the memorandum or even read it, and may justify rescission, whether or not the plaintiff was damaged. See Adalman v. Baker, Watts & Co., 807 F.2d 359, 373 (4th Cir.1986); Johns Hopkins Univ. v. Hutton, 422 F.2d 1124, 1129 (4th Cir.1970). On the other hand, a claim under RICO requires both reliance and damage proximately caused by the violation. See Holmes v. Securities Investor Protection Corp., --- U.S. ----, ----, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992) (requiring as part of a RICO claim the showing that there be a "direct relation between the injury asserted and the injurious conduct alleged"); Brandenburg v. Seidel, 859 F.2d 1179, 1187 & 1188 n. 10 (4th Cir.1988) (holding that 18 U.S.C. § 1964(c) requires a plaintiff to show "(1) that he has suffered injury to his business or property; and (2) that his injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962"). Not only must the predicate conduct be in the causative chain connecting it to the damage claimed, but the relationship between conduct and damage must be proximate. See Holmes, --- U.S. at ----, 112 S.Ct. at 1318; Brandenburg, 859 F.2d at 1189. Plaintiffs' complaint makes no such allegations.
 
 
 47
 Even looking beyond the allegations of the complaint to the record, we can discover no evidence of reliance or damage. The record shows that while the plaintiffs have acknowledged that they continue to receive revenue from the oil and gas wells in which they invested, they "mocked the size of the checks," indicating that according to their computations they would get back only $20,000 for every $50,000 invested. While they also complained of not being kept adequately advised on business activities, no investor suggested that any alleged misrepresentation had anything to do with the business downturn or the value of his or her investment. Indeed, we can find no assertion by the plaintiffs that the stated misrepresentations were even material to their reasons for investing. Most acknowledged that they invested primarily for tax reasons, and many acknowledged not having read the memoranda, or at least not in any detail.
 
 
 48
 We hold that allegations that go no further than necessary to satisfy the requirements for stating a cause of action under § 12(2) of the Securities Act, 15 U.S.C. § 77l (2), fail to state a civil claim for RICO under 18 U.S.C. § 1964(c). Plaintiffs' reliance on our decision in Morley does not support their assertions to the contrary. In Morley, we simply held that evidence in the record was sufficient to present a jury question of whether the plaintiffs had relied on the misrepresentations of the defendant. Morley, 888 F.2d at 1011. In this case the district court did not err in dismissing the RICO count.
 
 
 49
 The district court applied the same causation analysis in dismissing the common law fraud count. As the common law of Virginia requires a showing of proximate cause to establish a fraud claim, see Murray v. Hadid, 238 Va. 722, 385 S.E.2d 898, 903-04 (1989), we affirm.
 
 VI
 
 50
 Finally, with respect to the counts brought under state securities laws, the district court dismissed Counts III and V (brought under the Virginia and Louisiana statutes, respectively) because the stated limitations periods had not been satisfied. On Count IV, brought under the Texas statute, the court dismissed the claim without prejudice because it had dismissed all claims justifying federal jurisdiction and, in its sound discretion, refused to hear a state law claim of limited scope.
 
 
 51
 The claim stated in Count III under the Virginia Blue Sky Law is subject to an absolute cutoff two years after the transaction on which the claim is based. Similar to the language of § 13 of the Securities Act, the Virginia provision reads:
 
 
 52
 No suit shall be maintained to enforce any liability created under this section unless brought within two years after the transaction upon which it is based....
 
 
 53
 Va.Code Ann. § 13.1-522(D) (emphasis added). The only court to have addressed the availability of equitable tolling under this section concluded from the language of the statute that the limitations period cannot be tolled by the absence of knowledge. See Cors v. Langham, 683 F.Supp. 1056, 1058 (E.D.Va.1988) ("The Virginia statute ... has apparently taken the deliberate step of providing a hard and fast period of limitations for its Securities law."). In the absence of Virginia authority to the contrary, we conclude from the plain meaning of the statute that the Virginia legislature intended to provide unqualifiedly that a claim must be brought within two years "after the transaction upon which it is based." Since all transactions in question here occurred more than two years before the date suit was filed, August 28, 1991, we find no error in the district court's dismissal with prejudice of the claims brought under Virginia Blue Sky Law.
 
 
 54
 The result is different, however, for the claim brought in Count V under the Louisiana Securities Act. While the applicable statute of limitations for a claim under the Louisiana act reads, "No person may sue under this Section more than two years from the date of the contract for sale or sale, if there is no contract for sale," La.Rev.Stat. § 51:714(C), the case law interpreting this provision has uniformly held that the limitation period runs only from the date plaintiffs knew or should have known of the alleged securities fraud. See Landry v. All American Assurance Co., 688 F.2d 381, 392-94 (5th Cir.1982); Moore v. A.G. Edwards & Sons, Inc., 631 F.Supp. 138, 142 (E.D.La.1986). Because the factual question of when plaintiffs discovered the facts underlying their claim under the Louisiana act has not been resolved, the district court's dismissal of this claim with prejudice was error. Accordingly, we modify the judgment to provide that the dismissal of Count V is without prejudice, permitting plaintiffs to pursue in state court any claim that they may have under the Louisiana Securities Act.
 
 
 55
 Finally, with respect to the district court's decision not to retain jurisdiction over Count IV, brought under the Texas Blue Sky Law, we find no abuse of discretion. See 28 U.S.C. § 1367(c).
 
 VII
 
 56
 In summary, the order dismissing Count V (the Louisiana Securities Act claim) is modified to be without prejudice and, as thus modified, is affirmed. As to all other counts, the judgment of the district court is affirmed.
 
 
 57
 AFFIRMED AS MODIFIED.
 
 
 
 [1]
 The plaintiffs contend that the various offerings to plaintiffs should be integrated and treated as one, and the date of the last sale of the integrated offering should begin the three-year limitation period provided in § 13 for all earlier sales
 
 
 [2]
 It is apparently uncontested that the plaintiffs purchased partnership interests on the following dates:
 Robert J. Caviness: December 23, 1987, and December 28, 1988
 Barry J. Friedman: December 30, 1987
 Brian A. Johnson: December 30, 1987
 Mark H. Tuohey, III: December 16, 1987
 Patrick J. Haley, Jr.: December 17, 1987
 Joseph E. and Kathleen H. Kampa: December 17, 1987
 Michael Hasten Bowman: September 25, 1987
 Michael D. Sendar: December 31, 1987
 Caby C. Smith: May 6, 1988
 Brian J. McGregor: December 18, 1987
 Katherine S. Feghali: October 12, 1987
 Charles L. Frazier and Deborah Frazier White: May 13, 1987, and December 23, 1988
 Richard J. Davey: November 17, 1987
 Clifford R. Dunning: December 30, 1987
 Jesus D. Tapiador: August 17, 1987
 
 
 [3]
 The "DeRand" defendants are DeRand Resources Corp., DeRand Equity Group, Inc., DeRand Energy Corp., Arlington Energy Corp., DeRand Corporation of America, Rome Resources Corp., DeRand Investment Corporation of America, DeRand/Pennington/Bass, Inc., Randall N. Smith, Malcolm R. Rudolph, Denison E. Smith, Dan R. Kiely, William A. Conway, and David B. Reese
 
 
 [4]
 The "Marshall" defendants are Marshall Exploration, Inc., its parent Carlile & Howell, Inc., and Kenneth Q. Carlile
 
 
 [5]
 Section 13 of the Securities Act of 1933, as later modified, states:
 No action shall be maintained [under § 12(2) ] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought ... more than three years after the sale.
 15 U.S.C. § 77m.
 
 
 [6]
 The claims that were found not barred by the three-year limitation arose from the sale of partnership interests in DeRand Texiana III Partners, L.P., a Virginia limited partnership, to Caviness on December 28, 1988, and to Frazier and White, jointly, on December 23, 1988
 
 
 [7]
 Limiting periods for bringing court actions are here generally referred to as statutes of limitations, and a statute of repose is a subspecies. A statute of repose runs from a fixed date readily determinable by the defendant, such as, for example, the date of "sale," "transaction," "accident," or "occurrence," rather than a date determined by the personal circumstances of the plaintiff, such as, for example, the date of "discovery" or "damage." Using a fixed date easily determined by the defendant allows for "repose" from the cause of action and serves the need for finality in certain financial and professional dealings. Section 13 actually incorporates both a statute of limitation (claims must be brought within one year from "discovery") and a statute of repose (claims must in any event be brought within three years from the date of "sale")