POTOMAC ELECTRIC POWER COMPANY, Plaintiff,

v.

ELECTRIC MOTOR & SUPPLY, INC. et al., Defendants.

No. Civ.A. S–98–2519.

United States District Court, D. Maryland, Northern Division.

Nov. 8, 2000.

James P. Gillece, Jr., McGuire, Woods, Battle & Boothe LLP, Baltimore, MD, Paul J. Kelly, Jr., McGuire Woods Battle & Boothe, LLP, Baltimore, MD, for Potomac Electric Power Co., plaintiff.

Paul F. Kemp, Catterton, Kemp & Mason, Rockville, MD, for Electric Motor and Supply, Inc., defendant.

Bruce L. Marcus, Marcus and Bonsib, Greenbelt, Md, for Ralph Force, defendant.

James P. Ulwick, Kramon and Graham, Baltimore, MD, for Charles M. Rhodes, defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

Plaintiff, Potomac Electric Power Company ("PEPCO"), sued the Defendants,

Electric Motor & Supply, Inc. ("EMS"), Charles M. Rhodes ("Rhodes"), Ralph Force ("Force"), and Darryl Price ("Price"), alleging violations of the ·Racketeer Influenced and Corrupt Organizations Act ("RICO"), Title 18, sections 1962(a) and 1962(d). PEPCO's cause of action under § 1962(d) was subsequently dismissed by this Court. After extensive discovery on the remaining claim under § 1962(a), Defendants filed two separate motions for summary judgment, one for lack of proof of fraud, the other for lack of proof of damages.

The issues have been well briefed by the parties, and no oral hearing is necessary. Local Rule 105.6 (D.Md.). For the reasons stated below, Defendants' Motion for Summary Judgment on the issue of damages will be GRANTED and the motion for lack of proof of fraud need not be considered by the Court.

## BACKGROUND

PEPCO, a regulated utility company that provides electrical power to customers in the greater Washington, D.C. metropolitan area, and EMS, an industrial motor repair company located in Altoona, Pennsylvania, enjoyed a business relationship from 1985 until 1996. During that period, EMS provided motor repair services for hundreds of PEPCO electric motors as a result of EMS' successful bids on PEPCO's repair work.

PEPCO alleges that in March, 1994, it received an anonymous package suggesting that certain of its employees had engaged in fraudulent bid-rigging with certain EMS employees. Pursuant to this information, PEPCO launched an investigation led by Ed Stowe, one of PEPCO's security department investigators. PEPCO alleges that, based on its investigation, in connection with which a report was filed on August 31, 1994, it discovered that EMS committed fraud in connection with its repair of PEPCO motors. In particular, PEPCO alleges that EMS failed to repair the motors in accordance with PEP-CO specifications, and then falsified documentation, including inspection reports and invoices, in an attempt to cover up its fraudulent activities. The specifications with which EMS allegedly failed to comply required that EMS use epoxy as the varnish treatment for the motors and that EMS perform two treatments of Vacuum Pressure Impregnation ("VPI") with epoxy. PEPCO claims that EMS represented in its inspection reports and invoices that it completed two VPI epoxy treatments, while EMS' own internal time entry reports show that EMS did not in fact repair the motors according to that specification. PEPCO further asserts that EMS failed to perform required polarization index tests and surge tests according to the required specifications and falsified documentation as to the results of AC High–Potential Tests and required electrical calibrations.

PEPCO contends that EMS' alleged practices constituted a pattern or practice of fraudulent activity that benefitted EMS, as it was able to present the lowest bids to PEPCO and obtain the repair work. PEPCO also maintains that EMS invested money it saved from its practice of conducting fraudulent repairs back into the company in furtherance of its business. PEPCO brought this civil RICO suit against EMS pursuant to § 1964(c) which states that:

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee....

18 U.S.C. § 1964(c).

Section 1962(a) makes it:

> unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisi-

tion of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

Because PEPCO has failed to present any evidence that it sustained any injury to its business or property that is cognizable under § 1964(c), Defendants' motion for summary judgment for lack of proof of damages will be GRANTED.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a "scintilla" of evidence in support of the

nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 253, 106 S.Ct. 2505.

## ANALYSIS

I.  Damages Must be Shown Under RICO

■ As set forth above, in order for a plaintiff to recover for a RICO violation, the plaintiff must show that it was "injured in [its] business or property by reason of a violation of section 1962 of this chapter . . . ." 18 U.S.C. § 1964(c). In considering what must be proved by a RICO plaintiff under § 1964(c), the Supreme Court has stated that "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The Supreme Court refined this requirement in *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), concluding that section 1964(c) requires a showing that the defendant's conduct was the proximate cause of plaintiff's injury. The Fourth Circuit, therefore, has held that a claim under RICO requires the plaintiff to show "damage proximately caused by the violation." *Caviness v. Derand Resources Corp.,* 983 F.2d 1295, 1305 (4th Cir.1993).

The Second Circuit has examined the damage analysis under RICO in more detail. That court has compared the damage analysis under RICO to the analysis used "in other areas of the law," stating that RICO compensation "takes the form of awarding damages sufficient to place the plaintiff in the same financial position he would have occupied absent the illegal conduct." *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1106 (2nd Cir.1988). In *Bankers Trust,* the court concluded that because damages were "speculative" and "unprovable," the cause of action could not be maintained until damages became more

definite *Id.* In *Commercial Union Assurance Co. v. Milken,* 17 F.3d 608 (2nd Cir. 1994), the Second Circuit, relying on *Bankers Trust,* affirmed the dismissal of a private civil action under RICO because the plaintiffs "lack[ed] that most fundamental of legal elements necessary to support a viable cause of action—any demonstrable damages." *Id.* at 612. In that case, the plaintiffs had recouped their investment and received a substantial return. *See id.* The court concluded that "while we have no difficulty in finding that plaintiffs' causes of action might well subject defendants to liability, plaintiffs can prove no damages." *Id.* at 609. The Ninth Circuit has also further refined the injury analysis under § 1964(c), stating that "a showing of 'injury' requires proof of concrete financial loss...." *Oscar v. University Students Co-operative Ass'n,* 965 F.2d 783, 785 (9th Cir.1992). The federal courts, then, have made clear that the plaintiff in a civil RICO action must demonstrate that he suffered some compensable damage as a result of the racketeering activity.

■ In asserting its claim for damages, however, PEPCO is not required to show that the damages flowed from the defendant's investment use of racketeering income. This Court is bound to follow Fourth Circuit precedent, as set forth in *Busby v. Crown Supply, Inc.,* 896 F.2d 833, 837 (4th Cir.1990), which makes clear that a private plaintiff may assert an adequate claim under 1962(a) for relief notwithstanding the absence of any allegation of "investment use" of illegally derived funds. *See* Mem. and Order, February 19, 1999.

## II. Lack of Proof of Damages

■ PEPCO has failed to provide sufficient evidence to generate a triable issue that it suffered a compensable injury, and has thus failed to satisfy an essential element of its RICO claim. Furthermore, by failing to set forth any specific proof of damages, PEPCO cannot show that any damages it suffered were proximately caused by EMS' conduct.

The Complaint states that as a result of the defendants alleged behavior, the "motors enjoyed a lesser useful life than was expected and failed more frequently and sooner than would have ordinarily been expected." Compl. at ¶ 100. The Complaint alleges further that "Defendants' violation of 18 U.S.C. § 1962(a) caused PEPCO to suffer direct injury to its business and property through more than One Million Dollars ($1,000,000.00) in payments for repair work either not performed at all or improperly performed, plus other damages and losses described above." Compl. at ¶ 112.

In PEPCO's answers to interrogatories, it explained that it suffered damages associated with:

(1) the re-repair of motors; (2) the purchasing of new/replacement motors; (3) the premature failure of motors; (4) the shortening of a motor's "life"; (5) the labor and material expenses resulting from non-scheduled shut-downs of a generating unit; (6) the loss of income resulting from a failure to generate electricity during a non-scheduled shutdown; and (7) the cost to purchase electricity from other utilities during non-scheduled shut-downs.

Def.'s Mot., Ex. 6 at 8.

PEPCO has failed to support these bare damage claims with any evidence of loss. The damage report prepared by PEPCO's expert, Mr. Sherman, was lacking in any reference to specific losses suffered by PEPCO. In particular, the report provided no evidence regarding the number of motors that were not repaired in accordance with specifications, any additional expenses that were incurred to repair those machines that were not properly repaired by EMS, or the difference in value between motors that were repaired in accordance with specifications and those that were not. Mr. Sherman "calculated damages based on a return of all amounts paid by PEPCO to EMS," which is essentially

the aggregated price of all of the contracts. Def.'s Mot., Ex. 2 at 6. This is hardly an allowable measure of damages under these circumstances. Even assuming that the motors were not repaired in accordance with the contract, the damages award would normally be based on a benefit-of-the-bargain formula, ie., the difference between the value of the motors as repaired according to specifications and the value of the motors actually repaired by EMS. Cf. U.C.C. § 2–714(2) (damages for breach of warranty in a sale of goods contract being the difference "between the value of the goods accepted and the value they would have had if they had been as warranted....."). Maryland courts have adopted a "flexibility theory" for determining the measure of damages in cases of fraud and deceit. *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 511–512, 278 A.2d 42 (1971). Under this theory, the court may elect between "out of pocket" or "benefit of the bargain" damages. *Id.* Even if an out of pocket measure of damages is applied to this case, PEPCO must still provide "some evidence of the actual value of the services rendered or goods obtained." *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1204 (4th Cir.1989) (applying Maryland's "flexibility theory"). PEPCO has produced no evidence of the value of the motors they accepted back from EMS upon completion of EMS' repair work. In fact, when asked to give a value to the EMS repair work through deposition testimony, PEPCO's expert, Mr. Sherman, replied "that it is either unreasonable or not possible to go back and make a determination of the difference in either useful life or value between what was contractually called for and what was actually done." Def.'s Mot, Ex. 4 at 74. Mr. Sherman also stated that he had essentially assigned a dollar amount of zero to the value of the repair work performed by EMS. *See id.*

PEPCO's expert also determined that PEPCO's damage calculation should include additional expenses incurred as a result of failure of the equipment. Def.'s Mot., Ex. 2 at 6–7. Specifically, he explained that when a motor is taken off-line, PEPCO must either replace the motor, increase power production at another plant, or purchase energy from another source. *See id.* Mr. Sherman then provided a figure for the total amount of money paid by PEPCO to purchase additional energy for the period from 1994 – June 1999. However, a most important element was missing from this analysis— the portion of these costs that were attributable to EMS' allegedly wrongful acts. *See id.* at 8. Furthermore, in his report, Mr. Sherman explained that PEPCO motors suffered from a diminished useful life as a result of EMS' activity. However, Mr. Sherman was unable to quantify this loss because "experts with whom we have conferred state that quantification of the loss of useful life is speculative and unreliable." *Id.*

Just as the damages in *Bankers Trust*, cited supra, were unrecoverable because they were "speculative" and "unprovable," so too are the damages in this case. PEPCO's own experts stated that the calculation of damages for loss of useful life were "speculative and unreliable." PEPCO has provided no specific evidence of losses sustained as a result of the allegedly inadequate repairs performed by EMS. The Fourth Circuit affirmed a district court's dismissal of a RICO complaint on similar grounds where the plaintiffs were still receiving a return on their investment, and where no evidence was presented that the alleged misconduct of the defendants "had anything to do with the business downturn or the value of his or her investment." *Caviness*, 983 F.2d at 1305. In its response, PEPCO states that EMS "confuse[d] proof of injury with proof of damages." Pl.'s Opp'n at 11. Fourth Circuit case law makes clear, however, that plaintiffs asserting claims under § 1964(c) must prove "damage proximately caused by the violation." *See Caviness*, 983 F.2d at 1305. Plaintiffs have failed to provide adequate proof of such damage.

### III. Equitable Relief under RICO

In its response to the defendant's motion for summary judgment for lack of proof of damages, PEPCO focused on requesting equitable relief in the form of rescission of the contract, rather than providing specific evidence of damages it suffered. Equitable relief in the form of rescission is unavailable to the plaintiffs, first, because Fourth Circuit precedent suggests that equitable relief is not available in a private action under RICO, and second, because rescission is not an appropriate remedy under the facts of this case.

The Fourth Circuit has recently noted that section 1964(c) of RICO "makes no mention whatever of injunctive or declaratory relief." *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 726 (4th Cir. 1999). The court, quoting its prior decision in *Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir.1983), reiterated that " '[t]here is substantial doubt whether RICO grants private parties ... a cause of action for equitable relief.' " *Johnson*, 199 F.3d at 726 (quoting *Dan River*, 701 F.2d at 290). The court noted that "[t]his doubt is especially acute in light of the fact that Congress has declined to authorize injunctive remedies for private parties" under RICO. *Johnson*, 199 F.3d at 726. The court, looking to other circuit courts for guidance, stated further that "the only circuit to have squarely addressed the question held that 'injunctive relief is not available to a private party in a civil RICO action.' " *Id.* (quoting *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir.1986)). Based on this precedent, it is unlikely that the Fourth Circuit would allow PEPCO to assert a claim for equitable relief under RICO were the question squarely put before it.

Even if equitable relief were available to PEPCO under RICO, the specific equitable remedy sought, rescission of the contracts entered into between the parties, is unavailable in this case. In *Caviness*, the Fourth Circuit distinguished a securities law claim for rescission, which may be justified without a showing that the plaintiff was damaged, from a RICO claim, which the court stated required both reliance and damages proximately caused by the defendant's conduct. *See Caviness*, 983 F.2d at 1305. Thus, even if rescission were available here, PEPCO would still need to demonstrate that it is was damaged by EMS' conduct. As was determined above, PEPCO has been unable to produce evidence sufficient to generate a triable issue on damages.

Furthermore, PEPCO has not satisfied the common law requirements which would permit it to rescind its contracts with EMS. First, Maryland law requires a plaintiff requesting rescission to "promptly and properly manifest his determination to repudiate the contract...." *Lazorcak v. Feuerstein*, 273 Md. 69, 75, 327 A.2d 477 (1974); *see also Johns Hopkins Univ. v. Hutton*, 488 F.2d 912, 916 n. 12 (4th Cir. 1973) (stating that "in the general area of rescission it appears that the requirement of prompt action is an element of the plaintiff's case, and the burden is upon the rescinding party to show that he acted promptly in seeking rescission."). PEPCO failed to promptly seek rescission of the contracts in this case. PEPCO discovered this allegedly fraudulent activity in August of 1994, yet it continued to contract with EMS for repairs through 1996. *See* Pl.'s Opp'n at 2. Furthermore, PEPCO's Complaint was not filed until July of 1998, nearly four years after the investigation into the allegedly fraudulent conduct. Even at the time the Complaint was filed, the plaintiffs did not seek rescission. The request for rescission did not appear until PEPCO filed its opposition to the defendant's summary judgment motion in October of 2000. This is hardly a prompt and proper manifestation of a determination to repudiate the contract.

Second, the object of rescission is to bring the parties back to the position they occupied before the contract was signed. Maryland courts have stated that:

as a general rule, the party seeking rescission must indicate to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts. This offer of restoration or tender back must, at a minimum, demonstrate an unconditional willingness to return to the other party both the consideration that was given by that party and any benefits received under the contract.

*Lazorcak,* 273 Md. at 75–76, 327 A.2d 477 (citations omitted).

Under Maryland law, PEPCO cannot now ask for the full aggregated price of the contracts without returning to EMS the benefit or value of the repairs it received under the contracts. The fact that there is no evidence capable of assigning any value to the repair services provided to PEPCO demonstrates that rescission is an unworkable remedy under these circumstances. Moreover, rescission is generally not a practical remedy when services have already been performed, considering the difficulty inherent in returning the benefit of those services. *See Leaf Co. v. Montgomery County,* 70 Md.App. 170, 180, 520 A.2d 732 (1987) ("The contract is one for services already performed, which is not susceptible of rescission."). If rescission were ordered, and EMS required to pay back all monies paid to it by PEPCO without receiving anything in return for any benefit conferred on PEPCO, the parties would hardly be in the position they were in prior to the entering into the contracts.

Finally, the court in *Lazorcak* noted that by taking "any act which recognizes the continued validity of the contract ... [the party] will be held to have waived his right to rescind." *Lazorcak,* 273 Md. at 76, 327 A.2d 477. PEPCO in fact continued to recognize, and to perform under, the contract by paying for motors repaired into 1996, well after PEPCO discovered the alleged misconduct in 1994. *See, e.g.,* Compl. at ¶ 82. Therefore, even if equitable relief is available in a RICO action, PEPCO cannot request rescission of the contracts under these circumstances.

## CONCLUSION

Because the plaintiff has failed to adequately provide proof of damages, and because equitable relief in the form of rescission of the contract is unavailable in this case, a separate order will be issued GRANTING the defendant's motion for summary judgment on the issue of lack of proof of damages.