W. David LINER, et al., Plaintiffs,

v.

Gary DiCRESCE, et al., Defendants.

No. 1:93CV481.

United States District Court,
M.D. North Carolina,
Durham Division.

Sept. 9, 1994.

Michael W. Patrick of Haywood, Denny & Miller, Durham, NC, for plaintiffs.

William A. Blancato of Bennett & Blancato, Winston–Salem, NC, for defendant DiCresce.

H. Grady Barnhill, Jr., Jimmy H. Barnhill and Pressly McAuly Millen of Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, for defendant Kilgore.

David McKinley Barnes of Poyner & Spruill, Raleigh, NC, for defendant Wachovia.

Jonathan Drew Sasser and Douglas Ronald Ghidina of Moore & Van Allen, Raleigh, NC, for defendant Mutual Life Insurance of New York.

## *MEMORANDUM OPINION AND ORDER*

HIRAM H. WARD, Senior District Judge.

This matter comes before the Court on defendants' separate Motions to Dismiss, for Protective Orders and a third parties' Motion to Intervene. For the reasons stated herein, the various Motions to Dismiss will be partially granted and partially denied, the Motion to Intervene will be granted and the Motion for a Protective Order will be denied.

## I. FACTS

Plaintiffs contend that they each own a business which purchased dairy products from or sold dairy products to the Pine State Creamery Company (hereinafter "Pine State"). Plaintiffs contend that defendant Gary DiCresce (hereinafter "DiCresce"), acting as the agent for defendant Mutual Life Insurance of New York (hereinafter "MONY"), initially contacted Pine State in an attempt to induce Pine State to sell financial security plans to non-employee groups. In 1983, Pine State began selling plaintiffs "Pine State Customers Financial Security Plans" (hereinafter "the Plans"). The Plans offered the participants benefits for death, disability or forced retirement.

Plaintiffs allege that the Plans resembled insurance or annuity products typically offered by insurance companies. The Complaint states that "Pine State promised to pay the participants and their beneficiaries out of the general assets of Pine State." On March 31, 1993, Pine State filed for bankruptcy. Since initiating the bankruptcy proceedings, Pine State has defaulted on its obligations to Plan participants. Plaintiffs allege several claims for relief including; violation of federal and state securities laws, violation of RICO, common-law fraud and misrepresentation.

Plaintiffs contend that DiCresce knowingly and intentionally made false representations to plaintiffs regarding the Plans. Plaintiffs also contend that DiCresce was acting as the agent of MONY and therefore, MONY is liable for DiCresce's actions. Plaintiffs also filed this action against Benjamin W. Kilgore, III, (hereinafter "Kilgore") the former president of Pine State, and Wachovia Bank of North Carolina (hereinafter "Wachovia"), the personal representative of the estate of J.D. Kilgore, the late chairman of the Pine State Creamery Company.

For a variety of reasons, all defendants have moved to dismiss this action. Each defendant's motion will be addressed and discussed individually.

## II. DISCUSSION

All defendants have moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion should only be granted in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). The Fourth Circuit has stated that "a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.*

Based on *Rogers,* the question becomes whether the Complaint, taken in the light most favorable to plaintiffs, states any valid claim for relief. In deciding whether a claim has been stated, Rule 8 of the Federal Rules of Civil Procedure requires only "notice pleading" such that a defendant receives fair notice from the complaint of the claim and the grounds on which the claim rests. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The *Conley* court determined that discovery along with other pretrial procedures were more suited to allowing the parties to narrow and define the factual disputes. *Id.* at 47, 78 S.Ct. at 103.

### A. MONY's Motion to Dismiss

#### 1. Plans as Securities

MONY initially argues that Pine State's Plans are not securities and therefore, plaintiffs' claims for violation of federal and state securities laws should be dismissed. MONY correctly notes that in order to be a "securi-

ty", the Plans must fall within one of the statutory definitions.[1] MONY proceeds from this point to argue that the only category into which the Plans could fit is that of "investment contracts." MONY then spends great time and effort in arguing that the Plans are not investment contracts. MONY concludes by arguing that since the Plans are not investment contracts, they are not securities and the federal Securities law should not apply.

This is a well reasoned and convincing argument and may prove pivotal at the summary judgment stage. However, we are currently only deciding whether plaintiffs have stated a valid cause of action. It would be premature and inequitable to allow MONY to argue substantive reasons to dismiss this action before plaintiffs have been allowed to pursue discovery. MONY would be arguing from a position of knowledge while plaintiffs would be forced to counter from a position of ignorance.

█ At this stage, plaintiffs are only required to state a claim upon which relief could be granted. Plaintiffs have alleged that the Plans are securities and are covered by the federal Securities laws. This allegation is sufficient to withstand a Rule 12(b)(6) Motion to Dismiss. Accordingly, MONY's Motion to Dismiss because the Plans are not securities is denied. As noted earlier, plaintiffs' bare allegation may not be sufficient to withstand the inevitable summary judgment motion. However, by the time a Motion for Summary Judgment is made, plaintiffs will have had the opportunity to participate in discovery and will be better prepared to counter MONY's argument.

## 2. McCarran–Ferguson Act

MONY's next argument is that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, bars all federal causes of action in this case. The McCarran–Ferguson Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b).

The gist of MONY's argument is that all federal causes of action relating to the violation of North Carolina insurance laws are barred if North Carolina has enacted a statute which regulates the business of insurance. MONY concludes that North Carolina has enacted laws regulating the business of insurance and accordingly, all federal causes of action plead by plaintiffs are barred.

The plain meaning of the McCarran–Ferguson Act is clear; the Federal Government may not enact legislation that will "invalidate, impair or supersede" any state law regulating the business of insurance. What is not clear is whether the Federal Government may enact legislation which coincides with a State law but does not "invalidate, impair or supersede" the State law.

A brief look at the history of the McCarran–Ferguson Act may be helpful. Prior to 1945, the Supreme Court held that the business of insurance is interstate commerce and that the Sherman Act had not intended to exempt the insurance industry. *United States v. South–Eastern Underwriters Asso.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Soon after this decision, the McCarran–Ferguson Act was passed. In a decision subsequent to the enactment of the McCarran–Ferguson Act, the Supreme court stated that the "primary concern of Congress in the wake of [the *South–Eastern Underwriters Assoc.*] decision was in enacting legislation that would ensure that the States would continue to have the ability to tax and regulate the business of insurance." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 217, 99 S.Ct. 1067, 1076, 59 L.Ed.2d 261 (1979).

1. 15 U.S.C. § 77b states that "the term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or in general any interest or instrument commonly known as 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

The Supreme Court has held that insurance regulation has traditionally been under State control. *SEC v. Variable Annuity Life Ins. Co.,* 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959). The McCarran–Ferguson was enacted to protect a state's power to regulate the business of insurance.

■ MONY has not stated any way in which the Securities Act would invalidate, impair or supersede any law of the State of North Carolina. Likewise, allowing plaintiffs to proceed with their federal claims will in no way affect North Carolina's ability to tax and regulate the business of insurance. As a consequence, application of the Securities Act to the insurance industry is not prohibited by the McCarran–Ferguson Act. Accordingly, MONY's Motion to Dismiss based on the McCarran–Ferguson Act will be denied.

### 3. Securities Act's Statute of Limitations.

MONY contends that § 77m of Securities Act contains a statute of limitations and compliance with this period must be affirmatively pleaded. In *Caviness v. DeRand Resources Corp.* 983 F.2d 1295 1302 (4th Cir.1993), the Fourth Circuit stated that "[b]ecause the very statute that gives a plaintiff his cause of action conditions its enforcement on commencement of the action within specified time periods, the plaintiff bears the burden of establishing that his action meets the statutory requirements." *Caviness* at 1302. The *Caviness* court went on to hold that a plaintiff must "plead and prove facts that show his action was filed within the time periods specified by the statute." *Id.*

■ Normally a statute of limitations defense is an affirmative defense and a plaintiff bears no responsibility for pleading compliance with the limitations period. However in the Fourth Circuit, *Caviness* has created an exception for a complaint alleging violation of the Securities Act. Courts in other circuits have likewise held that a plaintiff must "plead and prove facts showing his claim was timely." See; *Anixter v. Home–Stake Production Co.,* 939 F.2d 1420, 1434 (10th Cir. 1991), *vacated on other grounds,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992)

and *Brick v. Dominion Mortgage & Realty Trust,* 442 F.Supp. 283 (W.D.N.Y.1977).

Plaintiffs contend that they are not required to affirmatively plead their compliance with the statute of limitations. Plaintiffs attempt to distinguish *Caviness* on the basis that *Caviness* was decided at the summary judgment stage whereas this action is only at the Rule 12(b)(6) stage. This distinction is meaningless. The Fourth Circuit position is clear; plaintiffs bear the responsibility of affirmatively pleading facts to indicate compliance with the limitations periods contained in the Securities Act.

In their complaint, plaintiffs do not affirmatively plead compliance with the limitations periods nor do they state dates sufficient to determine compliance with the limitations period. Therefore, MONY's Motion to Dismiss the claims for violation of the Securities Act may be granted. Instead of dismissing this cause of action, plaintiffs will be given twenty (20) days in which to amend their complaint and if the facts so warrant, allege compliance with the Securities Act statute of limitations. If plaintiffs fail to amend their complaint by alleging compliance with the Securities Act statute of limitations, all claims for violation of the federal Securities Act will be dismissed.

### 4. Private Right of Action under Section 17(a) of the Securities Act, 15 U.S.C. § 77(q)

■ The Fourth Circuit has clearly held that there is not private right of action under § 17(a). *Newcome v. Esrey,* 862 F.2d 1099 (4th Cir.1988). Plaintiffs argue that there is a split in the circuits and they wanted to preserve this issue in the event of change in the controlling authority in this circuit. *Newcome* has not been overruled and the rule of law in the Fourth Circuit is clear; there is no private right of action under § 17(a). Accordingly, MONY's Motion to Dismiss the claim for violation of § 17(a) of the Securities Act will be granted.

### 5. Conspiracy to Violate Federal Securities Laws

■ MONY next contends that plaintiffs failed to properly allege that defendants con-

spired to violate the federal Securities' laws. MONY contends that plaintiffs must allege the agreement of each defendant to the conspiracy. *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127 (7th Cir.1986), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). Applying this standard, plaintiffs are required to plead the agreement of each defendant to the conspiracy. In their complaint, Plaintiffs allege each defendant's position in the alleged conspiracy as well as each defendant's actions in the alleged conspiracy. These allegations are sufficient to withstand MONY's Rule 12(b)(6) Motion to Dismiss. Therefore, MONY's Motion to Dismiss will be denied with respect to the claim for conspiracy to violate federal Securities Laws.

### 6. RICO Claims

In order to state a valid RICO claim, plaintiffs must allege that defendants conducted or participated, directly or indirectly, in conduct of an enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt which injured plaintiffs. 18 U.S.C. § 1962(c). A "pattern of racketeering activity" has been interpreted as being at least two related predicate acts of racketeering within a ten-year period which pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989).

#### a. Statute of Limitations

■ MONY initially contends that plaintiffs' RICO claims are barred by RICO's four-year statute of limitations. A cause of action accrues "when a plaintiff knows or should know of the injury that underlies his cause of action." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir.1987). Thus, plaintiffs' cause of action did not begin to run until they discovered or should have discovered the fraud.

MONY argues that, from the day they purchased the Plans, plaintiffs knew or should have known of the facts contained in the Plan documents. However, plaintiffs contend that they were not aware of the alleged misconduct until Pine State defaulted on the payments. Pine State filed for bankruptcy and apparently began defaulting on payments to plaintiffs on March 31, 1993. This action was filed on August 17, 1993. Taking the assertion in the complaint as being true, as is required at this stage of the proceedings, plaintiffs filed this action within four years of discovery of the alleged misconduct. Accordingly, MONY's Motion to Dismiss due to failure to file within the limitations period is denied.

#### b. Predicate Acts

MONY claims that plaintiffs failed to plead that MONY committed the necessary predicate acts. MONY concedes that plaintiffs have alleged predicate acts by defendant DiCresce but MONY contends that plaintiffs cannot transfer DiCresce's predicate acts to them.

■ In their complaint, plaintiffs allege that DiCresce was at all times acting as MONY's agent. Since a principal can be liable for an agent's actions, MONY is potentially liable for DiCresce's misconduct. Thus, plaintiffs' agency allegation serves to transfer the predicate acts committed by DiCresce to MONY.

Plaintiffs claim numerous acts committed by DiCresce which were allegedly intended to defraud plaintiffs. As a consequence, plaintiffs have sufficiently alleged that DiCresce committed the necessary predicate acts. These predicate acts are attributable to MONY under an agency theory. Therefore, plaintiffs have stated that MONY committed the necessary predicate act. Accordingly, MONY's Motion to Dismiss for failure to allege sufficient predicate acts is denied.

#### c. Participation in the Operation and Management of the Enterprise

■ MONY's next argument is that plaintiffs failed to sufficiently allege that MONY participated in the operation and management of the enterprise. Plaintiffs have alleged that MONY, acting through its agent DiCresce, was involved in the planning and operation of the alleged scheme to defraud plaintiffs. Being involved in the planning and operation of a scheme is equivalent to participating in the operation and management of an enterprise. This allegation suffi-

ciently states that MONY participated in the operation and management of the enterprise. Accordingly, MONY's Motion to Dismiss for failure to plead participation in the operation and management of the enterprise is denied.

### d. Proximate Cause

■ A RICO plaintiff's injuries must be proximately caused by the alleged predicate acts before recovery is allowed. *Brandenburg v. Seidel,* 859 F.2d 1179 (4th Cir.1988). MONY contends that plaintiffs cannot recover when the alleged racketeering activity causes an intervening insolvency which prevents the insolvent party from meeting its obligations.

■ To support this theory MONY cites *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). *Holmes* involved allegations that the defendants conspired to manipulate stock prices and this manipulation scheme ultimately caused the broker to be unable to meet their obligations to other customers. These other customers were not involved in the scheme nor did they purchase any of the manipulated stock. The *Holmes* court found that the "link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker." *Holmes* at 270, 112 S.Ct. at 1319.

MONY contends that Pine State's bankruptcy was an intervening insolvency and the allegedly fraudulent activity was too remote to proximately cause plaintiffs' injuries. However, the present situation is clearly distinguishable from the events in *Holmes.* In the present situation, plaintiffs were directly targeted for involvement by the allegedly fraudulent scheme. This is in contrast to *Holmes* where the plaintiffs were uninvolved in the fraudulent activity. Plaintiffs contend that they were induced to invest in the Plans based on the fraudulent claims made by MONY's agent. This direct involvement in the allegedly fraudulent activities creates a close and proximate connection between plaintiffs' injuries and defendants' actions. This connection is much closer than the distant connection described in *Holmes.* Since the alleged misconduct directly induced plaintiffs to participate in the Plans, plaintiffs' injuries resulting from the failure of the Plans were directly and proximately related to the misconduct. Therefore, plaintiffs have sufficiently alleged that their injuries were proximately caused by the actions of MONY's agent's. Accordingly, MONY's Motion to Dismiss for lack of proximate cause is denied.

### e. Particularity of Pleadings

MONY next contends that plaintiffs failed to plead the necessary predicate acts with sufficient particularity. MONY begins by rearguing that the Plans were not securities and consequentially security fraud can not be a predicate act. As previously addressed in this Opinion, plaintiffs have stated a valid claim for violation of the Securities Act and it would not be proper, at this time, to find that the Plans were not securities. Therefore, the alleged acts of security fraud along with the alleged acts of mail and wire fraud can serve as the necessary predicate act.

■ In stating a RICO claim, with fraud as the predicate acts, plaintiffs are required to do more than make broad conclusory allegations. As Judge Britt recently stated, "a civil RICO claim alleging fraud must be pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Riley v. Murdock,* 828 F.Supp. 1215, 1225 (E.D.N.C.1993). In complying with Rule 9(b), plaintiffs are required to plead the "time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby." *Riley* at 1225.

The purpose of this requirement is to provide the specificity necessary to allow a party to properly defend themselves. A defendant must be given sufficient notice of the time, place and content of the alleged fraud. Without this notice, a defendant would be unable to properly prepare a defense.

■ Plaintiffs allege that, over a period of years, defendants solicited plaintiffs' participation in several financial security plans. Plaintiffs further allege that DiCresce acted as an agent for MONY and that DiCresce

fraudulently induced plaintiffs to purchase the Plans. Plaintiffs have alleged that DiCresce made numerous misrepresentations about the nature of the Plans. The misrepresentations were allegedly made at the time the Plans were sold to plaintiffs. Thus, MONY has been notified that the allegedly fraudulent statements were made at the time and place that the Plans were sold to the individual defendants. The complaint also states the nature of the allegedly fraudulent statements. Plaintiffs have stated the time, place and content of the allegedly fraudulent misrepresentations with sufficient particularity. Accordingly, MONY's Motion to Dismiss the RICO claims will be denied.

### 7. RICO Conspiracy

A RICO conspiracy occurs when a defendant agrees to participate in a conspiracy in which one member would commit a violation of 18 U.S.C. §§ 1962(a), (b) or (c) and a violation of one of those sections was committed. *United States v. Pryba,* 900 F.2d 748 (4th Cir.), *cert. denied,* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990). MONY contends that plaintiffs have failed to state a cause of action for a RICO conspiracy.

■ However to survive a Rule 12(b)(6) motion, plaintiffs must simply allege the above elements and the claim will not be dismissed unless there appear to be no facts which could be proven to support the allegation. In their complaint, plaintiffs allege that MONY "knowingly assisted" DiCresce in bringing about the allegedly fraudulent scheme. This allegation, taken in conjunction with plaintiffs' other factual claims, sufficiently states a claim for a RICO conspiracy. MONY has not presented any argument to convince this Court that plaintiffs would not be entitled to relief if the facts are as stated in the complaint. Therefore, plaintiffs' allegations are sufficient to withstand this Rule 12(b)(6) motion. Accordingly, MONY's Motion to Dismiss for failure to plead a cause of action for a RICO conspiracy is denied.

### 8. Common–Law Fraud and Negligent Misrepresentation

■ In North Carolina, a claim for common-law fraud is stated when plaintiffs allege that defendant made a(1) false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) was made with the intent to deceive, (4) did in fact deceive, and (5) resulted in damage to plaintiffs. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 374 S.E.2d 385 (1988). Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity" except that intent may be stated generally. This requirement for particularity has been interpreted as requiring plaintiffs to allege the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry,* 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

■ MONY contends that plaintiffs failed to plead a specific occasion on which MONY made a misrepresentation or omission of a material fact. Plaintiffs counter by relying on their agency theory, whereby MONY is liable for the actions of its agent DiCresce. In their complaint, plaintiffs stated that DiCresce made numerous misrepresentations and omissions with respect to the Plans and that plaintiffs relied on these misrepresentations and omissions. Plaintiffs claim these misrepresentations and omissions occurred at the time and place that the Plans were sold to plaintiffs. Thus, plaintiffs have pled the time, place and content of the alleged misrepresentations and omissions. Based on these allegations, plaintiffs have satisfactorily pled the necessary elements for fraud or misrepresentation with respect to DiCresce. Plaintiffs have also satisfactorily pled that DiCresce was acting as MONY's agent at the time of the alleged fraud. Therefore, plaintiffs have satisfactorily pled with sufficient particularity that MONY committed fraud or misrepresentation. Accordingly, MONY's Motion to Dismiss for failing to state a cause of action for common-law fraud or negligent misrepresentation is denied.

### 9. State Law Statute of Limitations

■ MONY contends that some or all of plaintiffs state law claims are barred by the

applicable state statute of limitations. MONY correctly contends that the statute of limitations for fraud or mistake is three years from the date when plaintiffs discovered the fraud or when the fraud should have been discovered. *Grubb Properties, Inc. v. Simms Investment Co.,* 101 N.C.App. 498, 400 S.E.2d 85 (1991). MONY contends that the Plan documents contained all the information needed to discover the fraudulent nature of any prior representations. Thus, MONY concludes that any plaintiff purchasing a Plan prior to three years before the filing of this action should be barred by the statute of limitations.

Plaintiffs however contend that they did not discover the fraud until May of 1993. Plaintiffs contend that the Plan brochures contained numerous misrepresentations and omissions and thus, the Plan brochures can not be relied upon to provide plaintiffs with notice of MONY's and DiCresce's misconduct.

Plaintiffs' complaint alleges discovery of the fraud in May of 1993 and this action was filed in August of 1993. Taking the facts alleged in the complaint as being true, this action was commenced within three years of the discovery of the fraud. After completion of discovery, it may turn out that some of the plaintiffs discovered or should have discovered the fraud prior to three years before the filing of this action. If this occurs, those plaintiffs will have their fraud claims dismissed at summary judgment. However, at the present stage of the proceedings, plaintiffs have alleged compliance with the three-year limitations period. Accordingly, MONY's Motion to Dismiss the common-law fraud claims will be denied.

MONY next argues that the claims for violation of North Carolina's Securities Act are barred by the applicable statute of limitations. There is a two year statute of limitations period from the date of the sale or contract to sale of the pertinent securities. N.C.Gen.Stat. § 78A–56(f). Plaintiffs' complaint fails to allege the specific date that the Plans were sold or were contracted to be sold. Based solely on the facts alleged in the complaint, it is impossible to determine that the Plans were sold or contracted to be sold

more than two years before this action was filed. After discovery, the purchase dates will be known and this matter will be properly determined at summary judgment. Since the dates for the sale or contract for sale cannot be determined from the face of the complaint, plaintiffs' claims are not barred on their face by the North Carolina Securities Act's two-year statute of limitations. Accordingly, MONY's Motion to Dismiss the North Carolina Securities Act claims will be denied.

MONY's next argument is that plaintiffs' claims under the North Carolina Unfair and Deceptive Trade Statute are barred by the statute of limitations. There is a four-year statute of limitations for claims under North Carolina's Unfair and Deceptive Trade Practices Act. N.C.Gen.Stat. § 75–16.2. For actions based on fraud, the cause of action accrues at the time the fraud is discovered or should have been discovered with reasonable diligence. *Nash v. Motorola Communications and Electronics, Inc.,* 96 N.C.App. 329, 385 S.E.2d 537 (1989), *aff'd.,* 328 N.C. 267, 400 S.E.2d 36 (1991). Plaintiffs' basis for their Unfair and Deceptive Trade Practices claim is the allegedly fraudulent actions of defendants. Thus, the limitation period did not begin until the fraud was discovered or should have been discovered. Plaintiffs further pled that they did not become aware of the fraudulent actions until May of 1993. This action was filed in August of 1993, well within four-years from the date plaintiffs claim the fraud was discovered. Consequentially, the four-year statute of limitations does not bar the claims for violation of North Carolina's Unfair and Deceptive Trade Practices Act. Accordingly, MONY's Motion to Dismiss the Unfair and Deceptive Trade Practices claims will be denied.

The statute of limitations for negligent misrepresentation is three-years and begins to run "when the wrong is complete." *Fulton v. Vickery,* 73 N.C.App. 382, 390, 326 S.E.2d 354, 360 (1985), *review denied,* 313 N.C. 599, 332 S.E.2d 178 (1985). MONY contends that the wrong was complete when the Plans were initially sold to each plaintiff. However in the complaint, plaintiffs contend

that the wrong was continuous through the time when each plaintiff finished its payment obligations.

In the complaint, plaintiffs allege that MONY, through its agent, continued to make fraudulent assertions about the nature of the Plans after the Plans were sold. Taking the assertions in the complaint as being true, then MONY, through its agent, continued to negligently misrepresent the nature of the Plans even after the Plans were initially sold to the individual plaintiffs. The statute of limitations will not begin for a specific plaintiff until the last wrong was committed with respect to that specific plaintiff. Since the complaint does not specify when the last wrong was committed on any particular plaintiff, there is no way to determine when the limitations period began. As a consequence, the three-year limitations period cannot, at this time, bar any of the negligent misrepresentation claims. Accordingly, MONY's Motion to Dismiss the negligent misrepresentation claims will be denied.

■ There is not a specific limitations period for civil conspiracy, however, the action must be brought within the time period corresponding to the limitation period applicable to the allegedly unlawful acts underlying the conspiracy. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). As discussed above, MONY has failed to have any of the state law claims dismissed due to being barred by the applicable statute of limitations. Since any one of the state law claims can form the basis of the conspiracy claim and the substantive claims have not been barred by the limitations period, the conspiracy claim will not be barred. Accordingly, MONY's Motion to Dismiss the conspiracy claim will be denied.

### 10. Dismissal of State Law Claims

MONY concludes by arguing that since all of the federal claims should be dismissed, all pendent state claims should be dismissed. This argument might be persuasive if in fact all of the federal claims had been dismissed. However, there are remaining federal claims. Since MONY has been unable to dismiss all federal claims, this Court will retain the state

law claims. Accordingly, MONY's Motion to Dismiss the state law claims is denied.

### B. Kilgore's Motion to Dismiss

Kilgore makes several arguments to support his motion to dismiss. In support of these arguments, Kilgore relies on several theories that are identical to those previously raised by MONY. Plaintiffs' basic claim against Kilgore is that he, along with Di-Cresce, made the misrepresentations or omissions that induced plaintiffs to purchase the Plans. For the reasons previously addressed in the discussion of MONY's motion, all of Kilgore's Motions to Dismiss are denied except for the motion to dismiss the Securities Act claim under § 77q. As previously stated, plaintiffs have twenty (20) days in which to amend the complaint to allege compliance with the Securities Act limitations period. If plaintiffs fail to allege compliance with this limitations period, all claims for violation of the federal Securities Act will be dismissed. Kilgore also made several arguments not made by MONY and these arguments will be discussed below.

### 1. Failure to allege purchaser or seller status

■ In order to have a valid claim for violation of the securities laws, plaintiffs must be purchasers or sellers of the securities in question. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Plaintiffs alleged that they were "purchasers, participants and/or beneficiaries" in the Plans. Since only purchasers and sellers have standing to bring a securities claim, Kilgore contends that plaintiffs allegation of being a participant or a beneficiary is insufficient to state a valid claim. After *Blue Chip Stamps*, there is no dispute that plaintiffs do not have standing unless they are purchasers or sellers of securities. The question becomes whether the alternative pleading by plaintiffs is sufficient to state a valid cause of action.

As stated earlier, Kilgore's motion is to dismiss for failure to state a claim upon which relief can be granted. Therefore, Kilgore's motion may not be granted if plaintiffs could be entitled to any relief based on the

facts as set out in the complaint. *Rogers* at 325. Although they did plead in the alternative, plaintiffs have plead that they were purchasers. If plaintiffs were purchasers, then they have standing to bring this action. Thus, plaintiffs have stated facts which, if proven, entitles them to relief. Accordingly, Kilgore's Motion to Dismiss for failure to allege that each plaintiff was a purchaser or seller is denied.

### 2. Failure to Allege a RICO Pattern

Plaintiffs are required to allege a "pattern of racketeering activity" by alleging at least two acts of racketeering activity. 18 U.S.C. § 1961(5). Kilgore concedes that plaintiffs have alleged acts of securities fraud, mail fraud and wire fraud. Yet, Kilgore argues that these predicate acts were not sufficiently pleaded and thus cannot form the necessary base on which to support the pattern of racketeering activity claim. As discussed in regard to MONY's motions, plaintiffs have sufficiently stated claims for securities fraud. Although the securities act claims may be dismissed if plaintiffs fail to amend the complaint to allege compliance with the statute of limitations, the facts alleged in the claims remain and are sufficient to satisfy the predicate act requirement. Accordingly, Kilgore's Motion to Dismiss for failure to allege a pattern of racketeering activities is denied.

### C. Wachovia's Motion to Dismiss

In their complaint, plaintiffs allege that J.D. Kilgore was "for many years before his death a major shareholder of Pine State", a "controlling person of Pine State" and "chairman of Pine State's Board." Based on his position with Pine State, plaintiffs allege that J.D. Kilgore participated in the fraud and misrepresentation that induced plaintiffs to participate in the Plans.

J.D. Kilgore died on March 19, 1989 and Wachovia was appointed administrator of the estate of J.D. Kilgore (the "Estate"). Wachovia claims, and plaintiffs do not dispute, that Wachovia published a notice to creditors on four occasions. These notices informed all creditors that they must present any claims against the Estate before October 23, 1989 or be barred from recovery. Plaintiffs

did not submit any claim on the estate prior to October 23, 1989. After the expiration of the creditor notification period, Wachovia distributed the assets of the Estate and filed a final accounting. The present action was filed in August of 1993.

There are two statutes that are applicable to the present action. Since plaintiffs' claims are based on fraud, the first statute requires a claim be filed within three years of the discovery of the fraud. N.C.Gen.Stat. § 1–52(9). The second statute requires that a claim be filed within six months after the personal representative of the decedent first publishes the notice to creditors. N.C.Gen. Stat. § 28A–14–1. Consequently, there are two statutes that concern when a plaintiff's claim can be barred.

A common canon of statutory construction is that when "one statute deals with a particular subject matter in detail, and another statute deals with the same subject matter in general and comprehensive terms, the more specific statute will be construed as controlling." *Piedmont Publishing Co., Inc. v. City of Winston–Salem,* 334 N.C. 595, 598, 434 S.E.2d 176, 177 (1993). Since § 28A–14–1 more specifically deals with when a claim may be filed against an estate, this statute will control. Thus, N.C.Gen.Stat. § 28A–14–1 will bar a cause of action even if the action is filed within three-years of discovery.

Wachovia argues that plaintiffs' claims are barred since the claims were not filed within the six-month statutory time period as required by N.C.Gen.Stat. § 28A–14–1. Creditors were first given notice on April 22, 1989. Therefore, the last day for creditors to present their claims was October 22, 1989. Plaintiffs did not take any action to file a claim until this action was filed in August of 1993. Wachovia contends that plaintiffs' claims are statutorily barred since no claim was filed prior to October 23, 1989.

Plaintiffs do not dispute Wachovia's claim of the creditor notification dates or the date that this action was filed. Nor do plaintiffs argue that the three-year limitations period should control over the more specific six-month period. Plaintiffs' argument is that there is a statutory exception to the require-

ment that creditors file their notice within six months of notification.

If a claim arises after the death of the decedent, N.C.Gen.Stat. § 28A–19–3(b)(2) allows a non-contract claim to be filed against an estate within six months after the date on which the claim *arises*. (emphasis added). However, if the claim arose before the death of the decedent, North Carolina's non-claim statute bars the claim unless it was presented within six months of notification of death. N.C.Gen.Stat. § 28A–19–3(a). Plaintiffs contend that their claims did not arise until they discovered the fraud which was when Pine State defaulted on its obligation to plaintiffs on March of 1993, this default was well after J.D. Kilgore's death. Since this action was filed in August of 1993, plaintiffs argue that their claim was filed within six months of their claim arising and consequently this action is not barred.

To support their contention, plaintiffs point out that their claim is based primarily on fraud. There is a three year statute of limitations for a claim based on fraud and the limitations period begins running at the accrual of the cause of action. N.C.Gen.Stat. § 1–52. In North Carolina, a cause of action based on fraud is deemed to accrue when the aggrieved party discovers the facts constituting the fraud or mistake. N.C.Gen.Stat. § 1–52(9). Thus, plaintiffs contend that their cause of action did not accrue until they discovered the fraud in March of 1993.

Plaintiffs then argue that the word "arise" in N.C.Gen.Stat. § 28A–19–3 should be interpreted to have the same meaning as the word "accrue" in N.C.Gen.Stat. § 1–52(9). If this interpretation is accepted, plaintiffs' cause of action will have arisen at the same time it accrued. The cause of action would arise and accrue when the fraud was discovered. This interpretation would result in the allegations in the complaint not being barred.

Wachovia argues that "accrue" and "arise" do not have the same meaning. Wachovia contends that the cause of action arose at the time the fraud was allegedly committed even though the cause of action did not accrue until the fraud was discovered. If this inter-

pretation is followed, plaintiffs' claims against J.D. Kilgore's estate will be barred by the non-claim statute.

The parties basic disagreement is over the interpretation of the meaning for the words "arise" and "accrue". This interpretation is one of substantive law. Since this Court is required by the *Erie*[2] doctrine to apply the substantive law of North Carolina, it will be necessary to attempt to predict how these various statutes would be interpreted the North Carolina Supreme Court.

In all states within the Fourth Circuit, except North Carolina, this type of interpretation of state law could be handled by certifying the issue to the state's highest court. The state's supreme court would then issue an opinion and that opinion would be the substantive law applied by the federal court. In this way, a federal court would not be required to predict the way in which the state's supreme court might interpret the law. However, since there is no way to obtain an opinion from the North Carolina Supreme Court, it is necessary to engage in an act of prognostication and attempt to predict how that court would decide the issue.

According to Black's Law Dictionary, "accrue" means "to increase, to augment, or to come to by way of increase." BLACK'S LAW DICTIONARY 19 (5th ed. 1981). Black's defines "arise" as meaning "to spring up, originate, to come into being or notice." BLACK'S LAW DICTIONARY 99 (5th ed. 1981). Accrue and arise are often used interchangeably and usually the words have similar meanings. Typically, a cause of action accrues at the same time the events take place that gives rise to the action. However, when the discovery rule is applied, the running of a statute of limitations is delayed and arise and accrue stop having the same meaning.

A cause of action for fraud accrues, and the statute of limitations begins to run, according to N.C.Gen.Stat. § 1–52(9) when the fraud is discovered. However, it seems logical that a cause of action arises or springs up or originates whenever the events take place that give rise to the cause of action. As a

2. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

consequence, a cause of action can arise when the fraudulent action takes place even though the cause of action may not accrue until the fraudulent action is discovered.

There is strong public policy to support plaintiffs' interpretation. It would be inequitable to allow the heirs to receive assets that the decedent obtained through fraud. This argument also has negative consequences. Plaintiffs' argument would require the decedent's heirs to return the inherited assets, or the monetary equivalent, so that plaintiffs could be compensated for the decedent's action prior to his death.

However, there is also a strong public policy argument to support Wachovia's position. North Carolina's non-claim statute was enacted to expedite the administration and closing of estates. *In re Estate of English*, 83 N.C.App. 359, 350 S.E.2d 379 (1986) *review denied* 319 N.C. 403, 354 S.E.2d 711 (1987). The non-claim statute provides a definitive time after which all claims are barred and the personal representative may distribute the estate's assets and close the estate.

Without this ability to bar new claims, a personal representative would never know when the estate could be closed. Thus, a personal representative could potentially be required to keep an estate open for years in anticipation of future unidentified claims for fraud. Heirs would also be forced to retain the inherited property, or its monetary equivalent, in anticipation of having to return the inheritance to cover unanticipated claims against the estate. This would tie up a decedent's assets as well as putting a tremendous burden on the transfer of property for an indefinite time after every death. It would unquestionably be in the public interest to have a specific date after which an estate's assets could be distributed and the estate could be closed. This would be a benefit to the personal representatives as well as a benefit to the heirs and devisees of the decedent.

It is necessary to balance the two competing public policies. On the one hand, allowing plaintiffs' claims will benefit potentially defrauded parties. The negative impact of this policy would be the requirement that personal representatives keep estates open indefinitely, thereby placing an undue burden on the transfer of inherited assets. On the other hand, barring all fraud claims not filed within six months of notice to creditors would facilitate the closing of estates and the devolution of property. The negative impact of this policy would be to penalize innocently defrauded parties by barring their claims before the claims even accrued.

This Court concludes that if this issue were before the North Carolina Supreme Court, the issue would have been decided in the following manner. The words "arise" and "accrue" normally are used interchangeably. However, when the discovery rule delays the running of the limitation period, a subtle yet distinct difference in meaning becomes evident. A cause of action arises when the events take place that give rise to that cause of action. A cause of action for fraud accrues when the fraud is discovered. In the present case, the cause of action arose when the fraud was allegedly committed; yet the cause of action did not accrue until plaintiffs discovered the fraud.

J.D. Kilgore died more than four years before this action was filed. Thus any alleged fraud committed by him must have been committed more than four years ago. Likewise, any cause of action for fraud must have arisen more than four years ago. Since any cause of action based in fraud must have arisen during J.D. Kilgore's lifetime, the North Carolina non-claim statute bars any claims filed more than six months after final creditor's notice.

Wachovia published the final creditors' notice in May of 1989, thus barring any claim after November of 1989. Since this action was not filed until August of 1993, the six month limitation period provided by North Carolina's non-claim statute bars all of plaintiffs' claims against J.D. Kilgore. Accordingly, all claims against Wachovia, Administrator of J.D. Kilgore's Estate, are dismissed with prejudice.

## D. DiCresce's Motion to Dismiss

DiCresce contends that plaintiffs have failed to sufficiently plead fraud in accor-

dance with Rule 9(b) of the Federal Rules of Civil Procedure and as a result, the fraud based RICO claims should be dismissed. As previously discussed in regard to MONY's identical argument, plaintiffs have plead their fraud claims with sufficient particularity. Accordingly, DiCresce's Motion to Dismiss the RICO claims will be denied.

DiCresce also claims the Plans were not securities and thus there could be no violation of any securities law. As discussed previously, plaintiffs have satisfactorily plead a violation of securities laws so as to withstand a Rule 12(b)(6) motion. It remains to be seen whether the Plans are still considered to be securities once all of the discovery has been completed. Accordingly, DiCresce's Motion to Dismiss the Securities Act claims will be denied.

DiCresce's Motion to Dismiss the Securities Act claims for failure to plead compliance with the limitations period will treated as previously discussed with regard to MONY and Kilgore. Accordingly, plaintiffs have twenty (20) days in which to amend the complaint to allege compliance with the federal Securities Act limitation period. If plaintiffs fail to amend their complaint, all claims for violation of the federal Securities Act will be dismissed.

### E. Motion to Intervene

 Four individuals have filed a joint Motion to Intervene as party plaintiffs in this action. This action was originally filed on August 17, 1993 and an amended complaint was filed on September 22, 1993. The Motion to Intervene was filed on November 24, 1993 with the intervening parties being represented by the same counsel as the original plaintiffs.

According to Rule 24(b) of the Federal Rules of Civil Procedure, anyone may be permitted to intervene if the applicant's claim and the main action have a question of law or fact in common. Rule 24(b) goes on to state that "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The four interveners are alleging identical claims against the same defendants. Thus, the existing and intervening parties have numerous questions of law and fact in common.

Since the claims alleged by the interveners are the same as those previously alleged by plaintiffs, defendants will not be prejudiced by having to defend any new claims. The parties have not engaged in any discovery, so adding new plaintiffs will not require any duplication of discovery nor create any undue delay. Therefore, subject to the specific objections addressed below, the Motion to Intervene will be granted.

DiCresce did not object to the intervention of the four new plaintiffs but MONY did object. MONY initially contends that the statute of limitations bars all of the underlying claims, thereby making any intervention futile. However as addressed earlier in this Memorandum and Opinion, defendants have been unsuccessful in dismissing all of plaintiffs' substantive claims. Therefore, the intervening plaintiffs have valid remaining claims upon which to intervene.

Naturally, all defendants will have the right to argue the statute of limitation's issue with respect to all applicable claims at the summary judgment stage. This right will likewise extend to the intervening parties.

MONY next argues that the intervening plaintiffs have failed to affirmatively plead compliance with the limitation's period established in the Securities Act. As discussed above, the Fourth Circuit requires a plaintiff to affirmatively plead compliance with the Securities Act statute of limitation. Because existing plaintiffs failed to affirmatively plead compliance, they must amend the complaint within twenty (20) days, if the facts so warrant, to allege compliance with the Securities Act limitation period. Since the intervening plaintiffs have alleged facts identical to those alleged by plaintiffs, the intervening plaintiffs must amend their complaint within twenty (20) days to allege compliance with the Securities Act limitation period. If the intervening plaintiffs allege compliance with the Securities Act limitation period, they will be allowed to intervene. If the intervening plaintiffs fail to allege compliance with the limitation period, their motion to intervene in

the claims for violation of the federal Securities Act will be denied.

As discussed above, there is no private right of action under Section 17(a) of the Securities Act. Accordingly, intervening plaintiffs are unable to prevail on a claim under Section 17(a). Allowing a party to intervene on a claim that cannot be prevailed upon would be pointless. Therefore, intervening plaintiffs will not be allowed to intervene on the claims for violation of Section 17(a).

MONY further contends that the intervening plaintiffs' claims are barred by various other statutes of limitations. MONY makes the same arguments as were made with respect to the claims of the initial plaintiffs. These arguments have been fully discussed above and need not be repeated. Accordingly, the intervening plaintiffs will not be barred, at this time, by any statute of limitations other than limitations period in the federal Securities Act. The Motion to Intervene will be granted for all claims except for violation of the federal Securities Act. The intervening plaintiffs will be allowed the opportunity to amend their complaint to allege compliance with the Securities Act's statute of limitation.

### F. Motion to Stay Discovery

On December 27, 1993, MONY filed a motion to stay discovery. MONY argued that this action was in the preliminary stages of settlement and that discovery would be a waste of time and resources. Nearly eight months have passed and this action has yet to be settled. MONY has failed to state any additional reasons to support the motion to stay discovery. Since there does not appear to be any imminent settlement on the horizon, there is no valid reason to stay discovery. Accordingly, MONY's Motion to Stay Discovery will be denied.

**IT IS, THEREFORE, ORDERED** that defendants' Motions to Dismiss for violation of 15 U.S.C. § 77(q) be, and the same hereby are **GRANTED,** that plaintiffs have twenty (20) days in which to amend the complaint to allege, if the facts so warrant, compliance with the federal Securities Act statute of limitations and that the remainder of defendants' Motions to Dismiss be, and the same hereby are **DENIED.** It is further **OR-DERED** that Wachovia's motion to dismiss all claims against Wachovia, as the administrator of J.D. Kilgore's estate, be, and the same hereby are **GRANTED.**